IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DARREYL YOUNG-GIBSON, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 11 C 8982 |
| ) | |
| BOARD OF EDUCATION OF THE CITY ) | Judge Virginia M. Kendall |
| OF CHICAGO, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Darreyl Young-Gibson requests that the Court vacate its June 4, 2013 Memorandum Opinion and Order granting Defendant's Motion for Summary Judgment, take additional testimony, amend its findings of fact and conclusions of law or make new ones, and direct the entry of a new finding of summary judgment in her favor. For the reasons stated below the Court denies Young-Gibson's Motions and strikes as moot her amended response to summary judgment.

**BACKGROUND**

Young-Gibson filed suit against Defendant Board of Education of the City of Chicago (the "Board") pursuant to Title VII of the Civil Rights Act of 1964, as amended by 42 U.S.C. § 2000e *et seq.* Young-Gibson, the former principal of Percy Julian High School ("Julian") in Chicago, Illinois, was reassigned from her position on April 2009 and subsequently terminated from her employment. In her Complaint, Young-Gibson alleged the Board terminated her because of her race and gender (Count I), and retaliated against her for opposing discrimination by rescinding the suspension of a fellow Julian employee (Count II). On June 4, 2013, the Court

granted the Board's Motion for Summary Judgment on both counts, finding that Young-Gibson had failed to establish a *prima facie* case for race and gender discrimination under Title VII. *Young-Gibson v. Board of Educ. of City of Chicago*, No. 11 C 8982, 2013 WL 2451157, at *11 (N.D. Ill. June 4, 2013). Specifically, the Court held that (1) "Young-Gibson's repeated insubordination and failure to implement her supervisor's directives, all of which were documented and led to actual disciplinary proceedings, demonstrate[d] that [she] did not meet the Board's legitimate employment expectations"; and (2) Young-Gibson had failed to identify a similarly situated employees outside of her protected class who was treated better than her. *Id.* at *11–14. The Court also found that Young-Gibson had failed to show that the Board's stated reason for terminating her was pretext for discrimination. *Id.* at *14. With respect to Count II, the Court held that Young-Gibson's attempt to rescind the suspension of a Julian employee and decision to send special education staff members to a conference using discretionary funds did not constitute protected activity and thus could not form the bases of a retaliation claim. *Id.* at *16. The Court also found that Young-Gibson had failed to show any causal connection between the filing of her charge with the Illinois Department of Human Rights alleging discrimination and her reassignment or termination. *Id.* at *16–17.

Young-Gibson timely filed a Notice of Appeal on July 1, 2013. (Dkt. 64.) Subsequently, she filed a Motion to Amend the Memorandum Opinion and Order, (Dkt. 69); an Amended Response in Opposition to the Defendant's Motion for Summary Judgment (Dkt. 71) with accompanying exhibits and a Local Rule 56.1 Statement, (Dkts. 71–72); and a Motion for a New Trial or to Alter or Amend the Judgment pursuant to Rule 59, (Dkt. 79.)

2

## DISCUSSION

Young-Gibson filed her Motion to Amend the Memorandum and Opinion Order pursuant to Federal Rule of Civil Procedure 52(b) and her Motion for a New Trial or to Alter or Amend the Judgment pursuant to Rule 59. However, motions under Rule 52(b) are typically filed after a bench trial. *See* Fed.R.Civ.P. 52(a), (b). As there has been no bench trial in this case, Rule 52 does not apply. Accordingly, the Court considers both motions under Rule 59(e). *See St. Mary's Hosp. Medical Center v. Heckler*, 753 F.2d 1362, 1365 (7th Cir. 1985) (the fact that the Defendant "fashioned her motion as falling within Fed.R.Civ.P. 52(b) rather than Rule 59(e) … "is not dispositive. Any motion that draws into question the correctness of the judgment is functionally a motion under Civil Rule 59(e), whatever its label.") (internal citations and quotation marks omitted).

## I.      Jurisdiction

As a preliminary matter, the Court must address its jurisdiction to decide Young-Gibson's motions. Ordinarily, the filing of a notice of appeal "divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982); *May v. Sheahan*, 226 F.3d 876, 879 (7th Cir. 2000). However, where a party files a timely notice of appeal *and* a timely Rule 59(e) motion, the notice becomes effective only after the Court has disposed of the Rule 59(e) motion. *See* Fed. R.App. P. 4(a)(4)(B)(i); *see Katerinos v. United States Dep't of Treasury*, 368 F.3d 733, 737 (7th Cir. 2004). The advisory committee notes to the 1993 amendments to Federal Rule of Appellate Procedure 4 make clear that this holds true regardless of whether the Rule 59(e) motion is filed before or after the notice of appeal:

> A notice filed *before the filing* of [a Rule 59(e) motion to alter or
> amend a judgment] *or after the filing* of a motion but before
> disposition of the motion is, in effect, suspended until the motion is
> disposed of, whereupon, the previously filed notice effectively
> places jurisdiction in the court of appeals.

Fed. R.App. P. 4 advisory committee's note to 1993 amendment (emphasis added).[1]

Accordingly, the Court retains jurisdiction to decide Young-Gibson's Rule 59 motions.

## II. Motion to Alter or Amend Judgment

"Once judgment has been entered, there is a presumption that the case is finished, and the burden is on the party who wants to upset that judgment to show the court that there is good reason to set it aside." *Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009). Under Rule 59(e), the Court may alter or amend its judgment if the movant " 'clearly establish[es]' (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment." *Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) (quoting *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006)); *see also Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012) (motion to amend or alter

---

[1] At least two district courts in this Circuit have determined that the trial court is divested of its jurisdiction to decide a Rule 59(e) motion where a party files the motion after filing a notice of appeal. *See Bond v. Walsh*, 11-CV-2059, 2011 WL 6149961, at *4 (C.D. Ill. Dec. 12, 2011); *Walker v. Peters*, No. 93 C 5479, 1994 WL 520971, at *1 (N.D. Ill. Sept. 21, 1994) ("If the Motion to Reconsider … preceded the Notice of Appeal, the latter would be rendered ineffective because there would be no final order from which an appeal could be taken …. If on the other hand the Notice of Appeal came first, this Court would have no jurisdiction to entertain the Rule 59(e) motion."). The Court respectfully disagrees with these decisions as it finds them in conflict with the advisory committee's notes to Fed. R.App. P. 4 and agrees with the Third Circuit's reasoning that:

> Permitting a notice of appeal to be effective before the [statutory time] period
> had run would emasculate Rule 59(e). A party would have no guarantee that he
> could use the full [period] to serve his motion. The time limit for seeking to
> amend or alter judgment—and thus obviate the necessity of an appeal—would
> be controlled by the happenstance of his opponent's filing of a notice of appeal.
> We will not permit this.

*United States v. Rogers Transp., Inc.*, 751 F.2d 635, 636 (3d Cir. 1985) (appellate court lacks jurisdiction even where Rule 59(e) motion is filed after notice of appeal).

judgment appropriate where movant "presents newly discovered evidence that was not available at the time of trial or if the movant points to evidence in the record that clearly establishes manifest error of law or fact"). This rule "enables the court to correct its own errors and thus avoid unnecessary appellate procedures." *Miller*, 683 F.3d at 813 (quoting *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996)). However, such motions are not appropriate vehicles for relitigating arguments that the district court previously rejected, or for arguing issues or presenting evidence that could have bene raised during the pendency of the motion presently under reconsideration. *Sigworth v. City of Aurora*, 487 F.3d 506, 512 (7th Cir. 2007). Whether to grant a motion to alter or amend judgment under Rule 59 is squarely within the Court's discretion and will only be disturbed for an abuse of discretion. *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996); *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995) (citations omitted).

Young-Gibson's first and second bases for reconsideration purport to identify errors in the Court's recitation of the facts of this case. Specifically, Young-Gibson takes issue with the Court's use of the word "also" in reference to her 20-day suspension in February 2008. In describing the circumstances surrounding that suspension, the Court stated the following:

> In February 2008, Jones disciplined Young-Gibson for insubordination for refusing to cooperate with the Department of Safety and Security and the Office of High School Programs. (Def. 56.1 St. ¶ 46.) Young-Gibson *also* received a 20-day suspension in February 2008 for her attempt to rescind the decision of then-CEO Arne Duncan to suspend a Julian employee pending the outcome of a formal investigation of allegations that the employee had an inappropriate relationship with a female student. (*Id.* ¶ 47.)

*Young-Gibson*, 2013 WL 2451157, at *1 (emphasis added). Young-Gibson submits that this recitation of the facts suggests that she was disciplined twice in February 2008 when in fact she was only disciplined one time for two alleged instances of misconduct.

To clarify, the Court's did not find that the above-mentioned acts of insubordination resulted in two different disciplinary actions. In its Memorandum Opinion and Order, the Court determined that "[o]n four separate occasions within a nine-month period, Young-Gibson *behaved in a manner* as to elicit disciplinary actions by her superiors." *Id.* at *11 (emphasis added). These four occasions included Young-Gibson's (1) refusal to cooperate with her immediate supervisor's office, the Department of Safety and Security, and the Office of High School Programs to correct student safety concerns at Julian; (2) attempt to unilaterally rescind a decision made by the CPS Chief Executive Officer, Arne Duncan; (3) failure to address parents' complaints in a timely manner; and (4) decision to spend her special education staff to a conference using discretionary funds after the Illinois State Board of Education ("ISBE") specifically notified her not to use those funds for that conference. *Id.* at *11–12. The Court's opinion does not address the number of times Young-Gibson was disciplined. Nevertheless, the Court recognizes that its statement, "Young-Gibson was disciplined *again* because she attempted to unilaterally rescind a decision made by the CPS Chief Executive Officer, Arne Duncan," *Id.* at *11 (emphasis added), suggests that the 20-day suspension was unrelated to Young-Gibson's refusal to cooperate with the Department of Safety and Security and the Office of High School Programs. To the extent the Court's analysis allows for this inference, the Court clarifies that Young-Gibson was suspended for 20 days in February 2008 for refusing to cooperate on student safety concerns *and* for attempting to unilaterally rescind the CEO's decision to suspend another Julian employee.

Next, Young-Gibson argues that the Court erred in stating that on September 11, 2008, the ISBE changed Julian's status from "Fully Recognized" to "Recognized Pending Further Review." Young-Gibson is correct. While it is not in dispute that Julian's status changed to "Recognized Pending Further Review" in September 2008, the record evinces a factual dispute regarding Julian's status before September 2008. According to a letter from the Assistant Superintendent of Special Education, Beth Hanselman, and an email from Patricia Folland, ISBE's Special Education Division Administrator for Chicago, Julian was on probation prior to September 2008. (Dkt. 51-9, p. 79; Dkt. 51-10, p. 43.) However, in a letter dated September 11, 2008, Folland informed Young-Gibson, then-CEO Arne Duncan and others that Julian's "continued and serious noncompliance with federal and state laws and mandates specific to the education of students with disabilities has resulted in a change of the school's status from 'Fully Recognized' to 'Recognized Pending Further Review.' " (Dkt. 35-7, p. 34.)

However, neither point of clarification warrants a different outcome at summary judgment. It remains the case that the Young-Gibson displayed a pattern of insubordination and disrespect toward her superiors that resulted in two unpaid suspensions and one warning resolution within a nine-month period. Furthermore, the factual dispute regarding Julian's status is insufficient for Young-Gibson's to withstand summary judgment. Regardless of Julian's pre-September 2008 standing with the ISBE, it is undisputed that Julian was placed on probation on March 24, 2009 due to evidence of Julian's ongoing failure to serve students according to relevant legal and regulatory standards and prolonged noncompliance with legal and regulatory requirements in the area of Special Education Services. This change of status followed ISBE findings that Young-Gibson had displayed a lack of attention, involvement, and oversight with respect to the special education programs and services, and demonstrated a lack of managerial

expertise regarding student safety. It is also undisputed that Julian achieved only 30.6 percent of available performance points in 2008 and that student performance data demonstrated that Julian students were achieving well below district averages. On these facts, Young-Gibson cannot convincingly maintain that she was meeting the Board's legitimate employment expectations. As the Court noted in its June 4 Memorandum Opinion and Order, "making *some* contribution isn't the same as making the *expected* contribution," and an "employee who [is] recognized for performing some aspects of his duties well but failed to worth well with subordinates, peers, and supervisors [does] not meet [his employer's] legitimate employment expectations." *Young-Gibson*, 2013 WL 2451157, at *12 (quoting *Martino v. MCI Comm. Serv.*, 574 F.3d 447, 454 (7th Cir. 2009), and citing *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 300 (7th Cir. 2004)). Accordingly, the Court's use of the word "also" and reference to Julian's pre-September 2008 status as "Fully Recognized" do persuade the Court to alter or amend its order granting the Board's Motion for Summary Judgment.

Young-Gibson's remaining arguments are not proper bases for reconsideration under Rule 59. Young-Gibson asserts the Court: (1) was incorrect in determining that she exhibited "a long history of volatile relations" with co-workers because she was only suspended twice during nine-month period; (2) was incorrect in finding the Board's decision to terminate her was not pretext for discrimination; and (3) incorrectly determined that her reassignment to an administrative position was not in violation of her due process rights. These arguments do not identify clear manifest errors of law or fact. Nor do they present a significant change in the law or point to newly-discovered and previously-unavailable evidence precluding summary judgment. Instead, Young-Gibson's motions merely attack the Court's reasoning in reaching its decision. Her arguments treat the Court's ruling as if it were an opponent's brief, which is

subject to refutation, rather than a judicial order, which must be followed.    If Young-Gibson believes the Court erred in reaching its decision, her proper recourse is to appeal to the Seventh Circuit, not to file another motion here that simply rehashes the same arguments that were previously considered and rejected by this Court.

Young-Gibson also presents new facts and theories of liability.  Specifically, she argues that (1) her first unpaid suspension was in response to her having "become[] knowledgeable" of another Board employee who had a criminal record, and (2) Board CEO Ron Huberman issued, posted on the Chicago Public Schools' website, and sent to various news media a press release regarding her removal.  As these facts and theories of liability were not—but could have been— raised at the summary judgment phase of these proceedings, they are not proper bases for reconsideration. *See Sigworth*, 487 F.3d at 512.

## CONCLUSION AND ORDER

For the reasons discussed above, the Court denies Young-Gibson's Motion to Amend the Memorandum Opinion and Order and Motion for a New Trial or to Alter or Amend the Judgment pursuant to Rule 59.  The Court strikes as moot Young-Gibson's amended response to summary judgment.  In support of her amended response to summary judgment, Young-Gibson re-filed several exhibits that were previously placed under seal pursuant to Court Order on February 7, 2013. (*See* Dkt. 55.)  The Court once again orders that Exhibits 9, 12, 13, and E be removed from the docket and placed under seal.

Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date:  August 28, 2013